# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

JIMMY BAUGH,

      Petitioner,

v.

CARMEN PALMER,

      Respondent.

_____/

CASE NO. 2:08-CV-13033
HONORABLE GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

## I. <u>Introduction</u>

This is a habeas case under 28 U.S.C. § 2254. Jimmy Baugh, ("Petitioner"), is a state inmate who is currently confined at the Michigan Reformatory[1] where he is serving a term of life imprisonment, a concurrent term of two-to-five years, and a consecutive two-year term. The sentence results from his Wayne Circuit Court convictions for first-degree felony murder, M.C.L. 750.316, felon in possession of the firearm, M.C.L. 750.227f, and possession of a firearm during the commission of a

_____

[1] When petitioner originally filed his petition for writ of habeas corpus, he was incarcerated at the Mound Correctional Facility, but has since been transferred to the Lakeland Correctional Facility. The only proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated habeas petitioner would be the warden of the facility where the petitioner is incarcerated. *See Edwards v. Johns,* 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006); *See also* Rule 2(a), 28 foll. U.S.C. § 2254. Therefore, the Court substitutes Warden Carol R. Howes in the caption.

1

felony, M.C.L. 750.227b, respectively. Petitioner has filed a *pro se* petition for writ of habeas corpus claiming that he is incarcerated in violation of his constitutional rights. Respondent, through the Michigan Attorney General's Office, has filed a response, arguing that Petitioner's claims lack merit or are procedurally barred. For the reasons which follow, the petition will be denied.

## II. <u>Procedural History</u>

Petitioner was found guilty after a jury trial of multiple charges, including first-degree murder, related to the shooting death of Craig Land. Following sentencing, Petitioner was appointed appellate counsel who filed an appeal by right. Petitioner's brief on appeal raised three claims:

> I. Prosecution witness Robert Kwanniewski testified that defendant wanted him to run over decedent, but he refused, and merely cut him off, so defendant could rob him. He also testified he was "non-violent" and denied his prior testimony that he was an armed robber. The trial court precluded the defense from showing that the witness had several prior assaultive convictions. The trial court committed evidentiary error, and committed plain error infringing the Fourteenth Amendment right to due process and the Sixth Amendment right of confrontation.
>
> II. The trial court erred in instructing on an aiding-and-abetting theory that the prosecution had not relied on in presenting its case in chief.
>
> III. The prosecutor's improper vouching denied defendant a fair trial.

Petitioner also filed a supplemental brief through another attorney, raising an additional five claims. The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished opinion. *People v. Baugh*, No. 247548 (Mich.Ct.App. October 28, 2004).

Petitioner filed an application for leave to appeal in the Michigan Supreme

Court, raising the three claims that his original appellate counsel raised in the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Baugh,* No. 127611 (Mich.Sup.Ct. October 19, 2005).

Petitioner returned to the trial court and filed a motion for relief from judgment. The motion raised four claims:

> I. The prosecutor engaged in misconduct by requesting exculpatory evidence, deceased witness statement, be excluded. Thus denying defendant the right to a fair trial and the ability to present exculpatory evidence in his defense.
>
> II. The trial court abused its discretion by excluding exculpatory evidence from defendant's trial.
>
> III. Court-appointed trial counsel provide ineffective assistance by failing to move the trial court to make a part of record, trial court decision to exclude deceased witness statement.
>
> IV. Court-appointed appellate counsel provided ineffective assistance by neglecting to raise the above issues on direct appeal.

On February 15, 2007, the trial court denied the motion on the merits. Petitioner filed an application for leave to appeal raising the same claims, but the Michigan Court of Appeals denied it "for failure to demonstrate entitlement to relief under M.C.R. 6.508(D)." *People v. Baugh*, No. 280250 (Mich.Ct.App. November 16, 2007). Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, but leave to appeal was denied. *People v. Baugh*, No. 135586 (Mich.Sup.Ct. June 23, 2008).

Petitioner has now filed an application for writ of habeas corpus raising the following claims:

I. The trial court violated Petitioner's constitutional right to due process and confrontation when prosecution witness Robert Kwanniewski testified that defendant wanted him to run over decedent, but he refused, and merely cut him off, so defendant could rob him. He also testified he was "non-violent" and denied his prior testimony that he was an armed robber. The trial court precluded the defense from showing that the witness had several prior assaultive convictions.

II. Petitioner was denied his constitutional right to a fair trial by the prosecutor's improper vouching.

III. Petitioner was denied his constitutional rights to a fair trial and the ability to present exculpatory evidence in his defense when the prosecution engaged in misconduct by requesting exculpatory evidence, deceased witness statement, be suppressed.

IV. The state trial court violated petitioner's constitutional right of due process by suppressing exculpatory evidence at trial.

V. Petitioner was denied his Sixth Amendment right to effective assistance when trial counsel failed to move trial court to make part of record trial court decision to suppress deceased witness statement.

VI. Petitioner was denied his Sixth Amendment right to effective assistance when appellate counsel failed to raise meritorious issue's on appeal of right.

### III. <u>Facts</u>

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> The victim in this case was a disabled forty-three-year-old man who lived with his father in Detroit. One evening, the victim rode his bicycle to a nearby convenience store to purchase beer. On his way home from the store, he was shot twice and died at the hospital. Near his bicycle, the police found $29 and a bag that contained a broken beer bottle.

Robert Kwanniewski, who is also known by several aliases, was with defendant on the day the victim was killed. Kwanniewski testified that he stole a Jeep Cherokee and returned to his home in Hamtramck, where defendant approached him with the idea to rob someone. Defendant, who was armed with a .22 pistol, needed $100 because he was short on rent. Kwanniewski claimed that he and defendant drove around, robbed one man, and spent the $50 proceeds on drinks, cigarettes, and drugs.

Kwanniewski claimed that defendant saw the victim in the instant case that evening, and they followed him away from a convenience store. Kwanniewski claimed that he cut the victim off with the Jeep and defendant approached the victim, demanding money. Because the victim did not cooperate, defendant shot him in the right hip, and the victim threw $29 at defendant. Kwanniewski became nervous because a vehicle was approaching, and he tried to hurry defendant. Defendant shot the victim again, this time in the left chest, and he returned to the Jeep without picking up the money. While they were driving away, defendant fired two gunshots at the approaching vehicle, which then ceased to follow them.

While incarcerated on other charges, defendant approached the police and made a statement, in which he admitted that he, Kwanniewski, and two other friends had stolen a Jeep on the day in question. Defendant asserted that he was a backseat passenger in the Jeep when Kwanniewski spotted the victim and they stopped the Jeep. According to defendant, Kwanniewski shot the victim twice because he failed to cooperate with a robbery attempt. Defendant did not remember the victim riding a bicycle.

Defendant and K wanniewski were arrested the following day for an unrelated carjacking. Kwanniewski spoke with the police several days after the arrest, but he did not implicate defendant and did not discuss the instant case. Several months later, defendant sent a letter to the police, requesting a meeting. Defendant discussed the instant case with an officer and made the above-mentioned statement, in which he implicated Kwanniewski. Both defendant and Kwanniewski were then charged with first-degree felony murder.

The trial court conducted a preliminary examination, but only bound Kwanniewski over for trial. Kwanniewski entered into a plea agreement with the prosecution, whereby he pleaded guilty to a reduced charge of second-degree murder in exchange for the dismissal of three

unrelated stolen car cases. Kwanniewski also entered into a sentencing agreement, which provided that he serve 18-40 years instead of 270-450 months in prison.

*People v. Baugh,* No. 247548, * 1-2 (Mich.Ct. App. October 28, 2004).

# IV. <u>Analysis</u>

## A. <u>Standard of Review</u>

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Simply stated, under section 2254(d), Petitioner must show that the state court's decision "was either contrary to, or an unreasonable application of, [the Supreme] Court's clearly established precedents, or was based upon an unreasonable determination of the facts." *Price v. Vincent*, 538 U.S. 634, 639 (2003).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly

6

established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. A state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## B. <u>Confrontation claim</u>

Petitioner first argues that he was denied his Sixth Amendment right to confrontation when the trial court prevented him from cross-examining prosecution witness Kwanniewski regarding his prior convictions for assaultive offenses. Petitioner asserts that this evidence was crucial to his defense because Kwanniewski testified that he was a non-violent person, and evidence of the prior convictions would have undermined his credibility.

The Sixth Amendment guarantees the right of an accused in a state criminal prosecution "to be confronted with the witnesses against him." U.S. Const. amend. VI; see also *Pointer v. Texas*, 380 U.S. 400, 407-08 (1965). Cross-examination is a "primary interest secured" by the Confrontation Clause. *Douglas v. Alabama*, 380 U.S. 415, 418 (1965); see also *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974).

The Supreme Court "ha[s] recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Davis*, 415 U.S. at 316-17. Therefore, "a criminal defendant

states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.'" *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986)(quoting *Davis*, 415 U.S. at 318).

However, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, . . . interrogation that is repetitive or only marginally relevant. . . . "[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.* at 679 (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam); see also *Davis*, 415 U.S. at 316 ("Cross-examination is . . . [s]ubject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation . . . .").

When "it is merely the extent of cross-examination that is limited, the trial judge retains a much wider latitude of discretion. Once cross examination reveals sufficient information to appraise the witness' veracity, confrontation demands are satisfied." *Boggs v. Collins*, 226 F.3d 728, 736 (6th Cir. 2000) (quoting *Dorsey v. Parke*, 872 F.2d 163, 167 (6th Cir. 1989)) (internal quotation marks omitted). Thus, "[w]here the trial court limits the extent of cross-examination, the inquiry for the reviewing court is 'whether the jury had enough information, despite the limits placed on otherwise

permitted cross-examination, to assess the defense theory.'" *Stewart v. Wolfenbarger*, 468 F.3d 338, 347 (6th Cir. 2007) (quoting *Dorsey*, 872 F.2d at 167).

In this case, the Michigan Court of Appeals denied Petitioner's claim on the merits. It found that the jury was in fact given enough information regarding the witness's criminal past to evaluate his testimony that he was law-abiding and non-violent:

> Defendant argues that Kwanniewski opened the door to impeachment and the jury was left with the impression that he was a "law abiding citizen" based on the following testimony during Kwanniewski's direct examination: "I'm not goin' to, you know, try to run nobody over. So, I cut [the victim] off for [defendant]" and, "Too much traffic. You know, I ain't wanted to get scene [sic] myself doing nothin' because that ain't me." We conclude that Kwanniewski's remarks did not open the door for impeachment. There is no evidence that Kwanniewski has a prior conviction for vehicular homicide. Additionally, Kwanniewski's remark, "that ain't me," appears to refer to his preference not to be discovered at the scene of a crime he has committed.

> Moreover, after reviewing Kwanniewski's testimony in its entirety, we conclude that the jury was not left with the impression that he was a law-abiding citizen. During direct examination, he admitted that he used an alias to avoid criminal responsibility and that he had pleaded guilty to second-degree murder. Kwanniewski had no qualms in "riding out" to commit an armed robbery or "stick-up" with defendant. During cross-examination, Kwanniewski admitted that he had been convicted of crimes involving theft or dishonesty. Although Kwanniewski first denied that he was an armed robber because he used a screwdriver to accomplish his crimes, Kwanniewski was impeached with his preliminary examination testimony. When Kwanniewski resisted stating the words, "Yes, I'm an armed robber," trial counsel persisted, and Kwanniewski admitted his earlier statement. As such, by the time Kwanniewski first stated that he was a "non-violent" person, defense counsel had already established Kwanniewski's violent character and failure to abide by the law.

> In addition to acknowledging that he was an armed robber, Kwanniewski admitted during cross-examination that he used three

aliases to avoid criminal responsibility. The jury heard Kwanniewski admit that he was arrested for an unrelated carjacking and that he and defendant had committed another robbery on the same day as the instant offense. Kwanniewski also testified that he and defendant were looking for a person named "Leo," who was "making trouble" for defendant's "lady friend." Even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence. M.R.E. 403; *People v. Sabin (After Remand)*, 463 Mich. 43,58 (2000). A witness' credibility may be impeached with prior convictions if the evidence has significant probative value on the issue of credibility .... " *People v. McDaniel*, 256 Mich.App. 165, 168(2003) (emphasis added). In light of Kwanniewski's admission to being an armed robber and his involvement in a carjacking and a murder, the jury more than likely had already determined that he was violent. We therefore conclude that by the time defendant requested to introduce evidence of Kwanniewski's prior assault convictions, the evidence would have been non-probative and cumulative. [*Baugh*, Slip. Op. at * 5].

This decision did not involve an unreasonable application of clearly established Supreme Court law. First, contrary to Petitioner's allegations, the prosecutor did not "open the door" to evidence regarding Kwanniewski's violent conduct in the past. On direct examination, Kwanniewski testified that the robbery occurred at a different location than originally planned. Kwanniewski explained that there was too much traffic at the planned location, stating: "you know, I ain't want get scene (sic) myself doing nothin' because that ain't me." Trial Tr. II at 175-176. Kwanniewski then testified that he was unwilling to bump the victim with his vehicle because "I'm not goin' to, you know, try to run nobody over. So I cut him off". Trial Tr. II at 176.

Petitioner reads the statement by Kwanniewski "that ain't me," out of context. Kwanniewski explained that the robbery did not occur at a certain location because there was too much traffic and he did not want to be observed. The reference to "that

ain't me" refers to the witness's desire not to be seen committing a crime. Read in its proper context, this statement was not a claim by Kwanniewski that he was unwilling to participate in the crime.

With respect to Kwanniewsi's statements that he was not willing to run someone over, his testimony that he "ain't no killer," and his claim that he was a non-violent person, the jury had ample evidence to determine the credibility of those claims without evidence of Kwanniewski's prior assaultive convictions.

Kwanniewski openly testified about his previous criminal activities, and nothing in his testimony would have left the jury with the impression that he claimed to be a peaceful, law-abiding citizen. Kwanniewski admitted that he had pled guilty to second-degree murder with respect to Land's death. Trial Tr. II at 165. Kwanniewski described himself at trial as a car thief, and he admitted that he stole the vehicle used for the murder. II 167. He admitted that agreed to "ride-out" with Petitioner in order to commit an armed robbery, knowing that Petitioner was armed. Trial Tr. II at 168-170. He acknowledged that he had been previously convicted for stealing cars . Trial Tr. II at 183. He testified that had been picked-up for car-jacking three days after the murder. Trial Tr. II at 190-192. He also admitted that he had described himself as an armed robber at a previous hearing. Trial Tr. II at 184-186. He had admitted that he would lie to the police to protect himself. Trial Tr. II at 189. And he admitted that before the attempted robbery of Land, he and Petitioner robbed another person. Trial Tr. II at 205. None of this other evidence was excluded by the trial court.

Accordingly, the state trial court did not prevent Petitioner from cross-

examining Kwanniewski as to his criminal past, which included acts of violence. The jury had enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory. *Stewart*, 468 F.3d at 347. Petitioner's rights under the Confrontation Clause were therefore not violated, and the decision of the Michigan Court of Appeals did not involve an unreasonable application of clearly established federal law.

## C. Prosecutorial Misconduct Claim

Next, Petitioner asserts that the prosecutor committed misconduct by vouching for Kwanniewski's credibility during closing argument. Respondent argues that the claim is barred from review due to Petitioner's failure to object to the alleged misconduct at trial.

Petitioner raised his prosecutorial misconduct claim in the Michigan Court of Appeals during his appeal of right. The state court declined to reach the merits of the claim:

> Because defense counsel failed to object to these comments, this issue has not been properly preserved for appeal. *People v. Stanaway*, 446 Mich. 643, 687; 521 N.W.2d 557 (1994). To avoid forfeiture of the issue defendant must show: (1) that an error occurred; (2) that the error was plain, i.e., clear or obvious; and (3) that the plain error affected substantial rights. *People v. Carines*, 460 Mich. 750, 763; 597 N.W.2d 130 (1999). We will only reverse defendant's convictions if he is actually innocent or the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Id*. at 763-764. [*Baugh*, Slip. Op. at * 5].

Federal habeas relief may be precluded on claims that a petitioner has not

presented to the state courts in accordance with the state's procedural rules. *Wainwright v. Sykes*, 433 U.S. 72, 85-87(1977). Such a procedural default occurs when a petitioner fails to comply with a state procedural rule, the rule is relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2005). Procedural default may be excused where the petitioner demonstrates cause and prejudice for his failure to comply with the state procedural rule, or when a petitioner establishes that failing to review the claim would result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Combs v. Coyle*, 205 F.3d 269, 274 (6th Cir. 2000). To demonstrate that a "fundamental miscarriage of justice" would occur absent review of a petitioner's claim, the petitioner must assert a credible claim of actual innocence that is supported by reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 315-16 (1995).

Petitioner's prosecutorial misconduct claim was procedurally defaulted by virtue of his failure to object to the prosecutor's comments in the trial court which resulted in appellate review under the more restrictive "plain error" standard of review. It is well-established that the Michigan Court of Appeals' application of plain-error review constitutes the invocation of an independent and adequate procedural rule that bars federal review of the merits of his claim absent a showing of "cause and prejudice." *Fleming v. Metrish*, 556 F.3d 520, 524 (6th Cir. 2009).

Petitioner does not acknowledge in his petition or reply brief that this claim is subject to the procedural default doctrine, so he does not attempt to demonstrate cause

to excuse his default. In order to establish "cause," a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Haliym v. Mitchell*, 492 F.3d 680, 690-91 (6th Cir. 2007) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). "Prejudice," meanwhile, "requires a showing that errors at trial 'worked to [the petitioner's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Haliym*, 492 F.3d at 690-91 (quoting *United States v. Frady*, 456 U.S. 152, 168(1982)).

The only conceivable candidate for cause would be an argument that Petitioner's trial counsel was ineffective for failing to object the allege misconduct. However, when a petitioner claims ineffective assistance of counsel as cause for a procedural default, the allegation of ineffectiveness is a separate claim which must itself be exhausted in state court according to the normal procedures. *Edwards v. Carpenter*, 529 U.S. 446, 452 (2000); *Murray v. Carrier*, 477 U.S. 478, 489 (1986) ("The exhaustion doctrine...generally requires that a claim of ineffective assistance of counsel be presented to state courts before it may be used to establish cause for a procedural default."). According to *Edwards*, the failure to exhaust the ineffectiveness claim will itself constitute a procedural default of the cause argument and prevents a federal court from hearing it. 529 U.S. at 452. Petitioner never exhausted a claim that his trial counsel was ineffective for failing to object to the alleges instances of prosecutorial misconduct, and therefore he cannot demonstrate cause to excuse his default.

Because Petitioner has not established cause, the court need not address the

issue of prejudice. See *McCleskey v. Zant*, 499 U.S. 467, 502 (1991). Yet, even if Petitioner had established cause, his showing of prejudice would fall short.

Petitioner claims that the prosecutor vouched for the credibility of his witnesses. A prosecutor may not express a personal opinion concerning the credibility of trial witnesses, because such vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir.1999). However, a prosecutor is free to argue that the jury should arrive at a particular conclusion based upon the record evidence. *Id.* The test for improper vouching for a witness is whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility. *United States v. Causey*, 834 F. 2d 1277, 1283 (6th Cir. 1987). "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *See United States v. Francis,* 170 F. 3d 546, 550 (6th Cir. 1999)(internal citations omitted); *See also Griffin v. Berghuis,* 298 F. Supp. 2d 663, 674-75 (E.D. Mich. 2004).

Petitioner cites to several portions of the prosecutor's closing argument where he stated that Kwanniewski was testifying truthfully. But these statements did not suggest that the prosecutor had hidden knowledge. Rather, the prosecutor made these statements in the context of relating to the jury the sentence agreement that Kwanniewski received in exchange for his testimony. Numerous cases have held that

15

a prosecutor does not engage in vouching by arguing that his witnesses have no reason or motivation to lie, when such comments are based on the evidence and do not reflect a personal belief of the prosecutor. *See United States v. Jackson,* 473 F. 3d 660, 672 (6th Cir. 2007); *U.S. v. Israel,* 133 Fed. Appx. 159, 165 (6th Cir. 2005); *U.S. v. Parker,* 49 Fed. Appx. 558, 563 (6th Cir. 2002); *See also Alder v. Burt,* 240 F. Supp. 2d 651, 669 (E.D. Mich. 2003). The prosecutor noted that Kwanniewski did not receive immunity, did not receive a "free pass" for this crime, and he agreed to serve 18 years minimum. Trial Tr. II at 15-17. The prosecutor did not state or imply that he had some hidden knowledge of Kwanniewski's credibility. When considered in the context in which it was made, the prosecutor's remark that the jury should believe Kwanniewski's testimony in light of his unfavorable plea deal was not improper.

Accordingly, review of Petitioner's prosecutorial misconduct claim is barred by his procedural default of failing to object at trial, and by his failure to demonstrate either cause or prejudice.

### D. Claims presented to the state courts on post-conviction review

Petitioner's third, fourth, fifth and sixth habeas claims were raised in the state courts in his motion for relief from judgment and the appeal that followed it. They all concern a police statement made by Gerves Lynn Crawford, who was deceased by the time the trial was held. Petitioner's third claim assets that the prosecutor committed misconduct by requesting that the statement be suppressed. His fourth claim asserts that the trial court erroneously granted the prosecutor's motion to exclude the statement. Petitioner's fifth and sixth claims assert that his trial and appellate

counsel were ineffective for failing to press the issue at trial and on appeal. Respondent contends that the claims are procedurally defaulted.

As stated, these claims were first raised by Petitioner in his state post-conviction review proceeding. The trial court denied the claims on the merits, and then the state appellate courts denied relief with citation to M.C.R. 6.508(D).

The Sixth Circuit has conflicting decisions regarding the sufficiency of the form order used by the Michigan appellate courts to invoke the procedural bar. Compare *Simpson v. Jones*, 238 F.3d 399, 408 (6th Cir. 2000) (language alone sufficient to constitute invocation of procedural bar), with *Abela v. Martin*, 380 F.3d 915, 923-24 (6th Cir. 2004) (language insufficient where lower court opinion rejected claims on the merits). The Sixth Circuit has recently granted rehearing en banc to resolve this issue. See *Guilmette v. Howes*, No. 08-2256, 2010 U.S. App. LEXIS 5684 (6th Cir. Mar. 12, 2010).

While the procedural default doctrine precludes habeas relief on a defaulted claim, the procedural default doctrine is not jurisdictional. See *Trest v. Cain*, 522 U.S. 87, 89 (1997). Thus, while a procedural default issue should ordinarily be resolved first, "judicial economy sometimes dictates reaching the merits of [a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted); see also, *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (noting that procedural default issue should ordinarily be resolved first, but denying habeas relief on a different basis because resolution of the default issue would require remand

and further judicial proceedings); *Walters v. Maass*, 45 F.3d 1355, 1360 n.6 (9th Cir. 1995).

In light of the uncertainty in the Sixth Circuit regarding this issue, the Court will therefore proceed to the merits of Petitioner's claims. Indeed, the Sixth Circuit itself has taken this approach. See *Roush v. Burt*, 313 Fed. Appx. 754, 757-58 (6th Cir. 2008) (noting the Sixth Circuit's conflicting decisions and the rule that procedural default is not jurisdictional, and concluding "because we affirm the district court's decision on the merits, we leave issues regarding procedural default and the generic use of MCR 6.508(D) for another day.").

The factual basis for Petitioner's final four claims center on a police statement made by Gerves Lynn Crawford on the night after the shooting. Crawford was deceased at the time of trial. Crawford stated in the police report:

> I was northbound when I saw a black truck stopped on Hayes/Novarra. When I got up a little further I could see a guy on the ground by a bike. He had his head up and was kicking his legs. I thought the guy had hit him. The guy pulled off and I followed him down to GMI/Gratiot where I got his plate. He looked back so I turned off and let him go. When I went back on Hayes the police were there.

Crawford denied that he saw any shots being fired. He described the truck as "a black sport utility. It was the size of a Explorer but it wasn't a Jeep or Excursion." He described the occupant of the vehicle as follows: "The guy looked young from his profile, was slim, small, small head (oval), medium complexion." Crawford stated that he did not see anyone else in the vehicle.

Petitioner asserts that his trial counsel planned to use Crawford's statement to

18

establish that Kwanniewski's description of the shooting was false. According to Petitioner, the description of the occupant of the vehicle given by Crawford better describes Petitioner than Kwanniewski. Implicit in Petitioner's argument is that if Crawford identified Petitioner as the driver, then it was Kwanniewski who was the shooter.

In his opening statement, defense counsel stated that "the main part of [Kwanniewski's] story is . . . [he] was the driver. You're going to learn there's a witness, and this is so important I think you're going to see this." Trial Tr. I at 31. At that point the prosecutor asked for a bench conference, after which defense counsel stated that "due to circumstances beyond my control I'm going to move on." Trial Tr. I at 32.

No further record of the issue was made at trial. However, when the trial court denied Petitioner's motion for relief from judgment it implicitly acknowledged that it had granted the prosecutor's motion to exclude the statement. Furthermore, Respondent's answer does not dispute the allegation that the prosecutor moved for exclusion of the statement, and that the trial court granted the motion.

Petitioner makes four arguments regarding the exclusion of the statement: (1) that the prosecutor committed misconduct in moving to suppress the statement; (2) that the trial court denied Petitioner's right to due process by granting the motion to suppress; (3) that trial counsel was ineffective for failing to make a record of the trial court's ruling; and (4) that appellate counsel was ineffective for failing to raise these issues during Petitioner's direct appeal. All of these claims fail for the same reason:

19

even assuming Crawford's police statement was admissible under a hearsay exception, it's absence did not have a substantial impact on the result of Petitioner's trial because the evidentiary value of the statement is equivocal at best.

The Supreme Court has explained that in cases involving review of a state-court criminal judgment under 28 U.S.C. § 2254, "an error is harmless unless it 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Fry v. Pliler*, 551 U.S. 112, 116 (2007) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993)). *Fry* adopted *Brecht's* more "state-friendly standard" for cases involving collateral review of state-court decisions. *Hereford v. Warren*, 536 F.3d 523, 532-33 (6th Cir. 2008). Under *Fry*, an error is considered not harmless when "the matter is so evenly balanced that the habeas court has grave doubt as to the harmlessness of the error." *Id.* at 533; *Patterson v. Haskins*, 316 F.3d 596, 609 (6th Cir. 2003).

Crawford's statement to police was not more beneficial to the defense than it was to the prosecution. Generally, it corroborated the prosecutor's theory that the perpetrators of the crime used a black sport utility vehicle to approach the victim, commit the crime, and then flee. Crawford's description of the aftermath of the crime, and his vague description of the one individual he saw in the sport utility vehicle, had little value to either party.

In his statement to police, Petitioner claimed that Kwanniewski and another man were in the front seats of the stolen vehicle at the time of the shooting, and he merely witnessed the crime from the back seat. Kwanniewski, on the other hand, testified that he drove the vehicle and Petitioner, the shooter, was the only other

occupant. Crawford's statement indicates that he only saw one person in the vehicle, presumably the driver. The observation of a single individual contradicts both Petitioner's claim that he was one of three men in the vehicle and Kwanneiwski's testimony that only he and Petitioner were in the vehicle. Crawford's observation of a single occupant as opposed to multiple occupants therefore would not have added substantially to Petitioner's defense because he did not see if there was only one other or two other individuals in the vehicle.

Moreover, Crawford's description of the one individual he did see had equivocal value. Crawford described the man as "young from his profile, was slim, small, small head (oval), medium complexion." Petitioner's statement to police indicates that his date of birth is 8/22/1966, and lists him as 5'10", 160 lbs. Kwanniewski's statement to police indicates that his date of birth is 9/15/1983, and lists him as 6', 250 lbs. So while Crawford's reference to the individual being slim appears to better describe Petitioner, his reference to the individual being young appears to better describe Kwanniewski. And because Crawford was deceased at the time of trial, there was obviously no opportunity to expand on his equivocal description. Contrary to Petitioner's allegations, the statement does not provide evidence that places Petitioner in the driver's seat. Rather, it provides nothing more than a vague description that could have just as easily led the jury to believe Kwanniewski was the driver based on Crawford's description of the occupant as being young.

Finally, Petitioner stated to police that he was seated in the back of the vehicle. To the extent he now claims that Crawford described him as the driver, this evidence

would have contradicted Petitioner's statement to police and undermined his credibility. While placing Petitioner in the driver's seat would tend to contradict Kwanniewski's testimony that Petitioner was the front-seat passenger, it would also have provided evidence that he acted as aider-and-abettor rather than the innocent back-seat passenger he claimed to be in his statement.

Because Crawford was deceased at the time of trial, there obviously would have been no opportunity for defense counsel to expand on his short statement to better support the defense. And because Crawford's statement does virtually nothing on its own to support or undermine the prosecution theory or the defense theory, its exclusion did not have a substantial impact on the outcome of Petitioner's trial. Any error associated with the exclusion of Crawford's statement from evidence was harmless.

Whether or not Petitioner's third, fourth, fifth, and sixth claims are barred from review by application of M.C.R. 6.508(d)(3), they must be denied because they are meritless.

## IV. <u>Conclusion</u>

The Court will deny the Petition for Writ of Habeas Corpus. The Court will also deny Petitioner a Certificate of Appealability. Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R.App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial

showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack,* 529 U.S. at 484. When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. *Id.* "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny a Certificate of Appealability because Petitioner has failed to make a substantial showing of the denial of a federal constitutional right. Jurists of reason would not find this Court's resolution of Petitioner's claims to be debatable or that he should receive encouragement to proceed further. *Siebert v. Jackson,* 205 F. Supp. 2d 727, 735 (E.D. Mich. 2002).

## V. Order

IT IS ORDERED that the Petition for Writ of Habeas Corpus is **DENIED.**

IT IS FURTHER ORDERED that a Certificate of Appealability is **DENIED.**

**Dated:  September 15, 2010**

**S/George Caram Steeh**
**GEORGE CARAM STEEH**
**UNITED STATES DISTRICT JUDGE**

---

**CERTIFICATE OF SERVICE**

**Copies of this Order were served upon attorneys of record on**
**September 15, 2010, by electronic and/or ordinary mail.**

**S/Josephine Chaffee**
**Deputy Clerk**

---